DILWORTH (BLOOMER v.). See Case No. 18,242.

## Case No. 18,290.

### DISTRICT ATTORNEYS' FEES.

[1 Blatchf. 647.] [1]

Circuit Court, N. D. New York. 1852.

DISTRICT ATTORNEYS' FEES.

1. Under the provisions of the act of May 18, 1842 (5 Stat. 484), which are made permanent by the act of March 3, 1845 (5 Stat. 764), the district attorneys for the Northern and Southern districts of New York are entitled to the same fees that are allowed to attorneys, solicitors, and counsel in the supreme court and court of chancery of New York, according to the nature of the proceedings, for like services rendered therein.

---

[1] [Reported by Samuel Blatchford, Esq., and here reprinted by permission.]

2. For services rendered to the United States by those officers in civil and criminal cases, their fees must be taxed according to the latest fee bill in the supreme court of New York, in which the rate of fees is prescribed for attorneys and counsel in that court, and which will be found in chapter 386 of the Laws of 1840, as amended by chapter 273 of the Laws of 1844. 2 Rev. St. N. Y. (3d Ed.) pp. 722-725.

3. The act of the legislature of New York abolishing all attorney and counsel fees (Laws N. Y. 1849, c. 438, § 303) does not affect the right of those district attorneys to the rate of compensation allowed to attorneys and counsel in the supreme court of New York, as it stood at the time of the passage of that act.

4. Where there is an allowance in the supreme court or court of chancery of New York, according to the nature of the proceedings, for a corresponding service, the district attorney can have no other or greater fee.

5. But it is not necessary, in order to entitle the district attorney to fees for a given service, that a corresponding fee for a like service should be given to attorneys, solicitors, and counsel, by an existing law of the state.

6. Where no such corresponding fee is given by any existing law of the state, the usage and practice is to refer back to some previous law of the state regulating the fees of attorneys and counsel, wherein may be found an allowance for a corresponding service.

7. The proper fees for subpœna tickets and for drawing indictments.

8. The practice prescribed for the commitment of prisoners by the marshal to the custody of the jails of the state, and for bringing them up for trial or other cause after such commitment.

9. The mittimus and the habeas corpus, in such cases, discussed.

The bills of James R. Lawrence, Esq., district attorney for the Northern district of New York, for services rendered to the United States in civil and criminal cases, at the October term, 1851, of the circuit court for that district, at Albany, having been submitted to Mr. Justice NELSON, he delivered the following opinion:

NELSON, Circuit Justice. The act of congress of March 3, 1841 (5 Stat. 427), provided, among other things, that, in lieu of all fees, emoluments, etc., it should and might be lawful for the district attorney to demand and receive "the same fees that now are, or hereafter may be, allowed," by the laws of the state where the courts are held, to the attorneys and counsel in the highest courts of the state in which the service was rendered, and no other fees or emoluments; and that he should receive for every day's actual attendance at any court, five dollars per day; and for any services, including the compensation for mileage, performed by him in the discharge of his official duty, for which no compensation was provided by the laws of the state, he "may receive such fees as are now allowed by law according to the existing usage and practice" of the courts of the United States. Then followed the limitation of the amount to be retained, which was not to exceed the sum of six thousand dollars per annum, over and above allowances to deputies and for office expenses. The above is the substance of the act, as it respects compensation to this officer. It was a proviso to the appropriation act of that year, and, therefore, would seem to have been of a temporary character.

The act of congress of May 18, 1842 (5 Stat. 484), forbids any per diem allowance to the district attorney, for attendance when the district or circuit court is sitting in bankrupt cases, unless his attendance is required by the court or the solicitor of the treasury, and also, in the Southern and Northern districts of New York, restricts the fees and emoluments of this officer to such as "now are or hereafter may be allowed by the laws of the state of New York" to attorneys, solicitors and counsel "in the highest courts of law or equity, of original jurisdiction," of the state, "according

to the nature of the proceedings, for like services rendered therein."

The act of 1841 adopted the fees and emoluments allowed to attorneys and counsel by the state laws, in the highest courts of the state, as the rate of compensation for like services of the district attorney in the district and circuit courts of the United States. The act of 1842 modifies the clause, as it respects the Northern and Southern districts of New York, by restricting the allowance to the rate in the highest courts of original jurisdiction. Under the act of 1841, the rate of fees to which the district attorney was entitled in New York was the fees allowed to attorneys and counsel in the late court for the correction of errors, that being the highest court of the state. Under the act of 1842, he is entitled to the rate allowed in the supreme court and court of chancery, according to the nature of the proceedings, these being the highest courts of law and equity in the state, of original jurisdiction.

The act of May 8, 1792 (1 Stat. 277, § 3), had adopted the same rule of compensation, namely, "such fees in each state respectively as are allowed in the supreme courts of the same." The same rule was given in the act of February 28, 1799 (1 Stat. 625, § 4), and which, as far as I have been able to find from an examination of the acts of congress, continued down to the passage of the provision of 1841.

The bills before me must, therefore, be taxed according to the latest fee bill in the supreme court of New York in which the rate of fees is prescribed for attorneys and counsel in that court, and which will be found in chapter 386 of the Laws of 1840, as amended by chapter 273 of the Laws of 1844. See this fee bill in 2 Rev. St. N. Y. (3d Ed.) pp. 722–725. Since the third edition of the Revised Statutes was published, all attorney and counsel fees in the supreme court of New York have been abolished by an act of the legislature, and the measure of compensation has been left to an agreement between them and their client. Laws N. Y. 1849, c. 438, § 303; St. N. Y. (Blatchf. Ed.) 265. I am of opinion, however, that this act does not affect the question of taxation, or the right of the district attorney to the rate of compensation allowed to attorneys and counsel, as it stood at the time of its passage.

The act of 1842 provides, that he shall not receive any greater or other fees, etc., for services rendered, than "now are or hereafter may be allowed by the laws of the state of New York" to attorneys, solicitors, and counsel "in the highest courts of law or equity," etc., "for like services rendered therein." This act virtually adopts the laws existing in the state at the time, prescribing fees to attorneys and counsel in the supreme court, and also any subsequent law modifying them, either by increasing or diminishing the rate. The rate of fees allowed by the laws of the state, when adopted, became a part of the act of congress; and so, in respect to any modification. The modification, however, must be a modification of the rate of the allowance, not an abrogation of all allowance of fees and compensation, in order to bring it within the fair meaning of the act of 1842. It was the fees that were then allowed to attorneys and counsel in the state, or that might thereafter be allowed, that was referred to as constituting the general rate of allowance to the district attorney. If no alteration took place, the rate continued as it stood in 1842. If the allowance was subsequently varied by the state law, that would govern. But there must be, in the subsequent change, an allowance for the corresponding services, before it can be made applicable. Any other interpretation of the act of congress would not only be unreasonable, but uncalled for by the terms of the provision. The law

of the state, therefore, abolishing all fees and compensation to attorneys and counsel, left the rate as adopted by force of the act of 1842 untouched. This provision of the act of 1842 seems to have been virtually re-enacted by the act of March 3, 1843 (5 Stat. 639, 640), by the act of June 17, 1844 (5 Stat. 690), and to have been made permanent by the third section of the act of March 3, 1845 (5 Stat. 764).

A criticism may be made upon the language of the act of 1842, the effect of which, it might be claimed, would lead to the conclusion that the district attorney is entitled to no fees since the passage of the law of the state abolishing them. I refer to the clause, "Any greater or other fees and emoluments, * * * for services rendered," etc., "than now are or hereafter may be allowed by the laws of the state of New York to attorneys, solicitors, counsel," etc., "for like services," etc. It may be said that this excludes all compensation for services, whatever they may be, by the district attorney, unless a corresponding fee for a like service can be found in an existing law of the state. But this is obviously not the meaning of the clause. The term "greater or other fees," in the connection in which it is found, means no greater or other fees shall be allowed this officer for a service rendered than are allowed to attorneys or counsel by the state law for a like service rendered by them. In other words, where there is an allowance in the supreme court or court of chancery of the state, according to the nature of the proceedings, for a corresponding service, the district attorney shall have no other or greater fee. This is all that the clause means, and not that, if no allowance can be found for the service in the state law, nothing shall be allowed this officer for the service.

The usage and practice in such cases (and which was recognized in the act of congress of 1841) is to refer back to some previous law of the state regulating the fees of attorneys and counsel in which may be found an allowance for a corresponding service. The object of this part of the provision of the act of 1842 was to change the rate of the fees from that of the highest court of the state, to that of the highest court of original jurisdiction, as has already been explained.

There are few items in the bills which have been erroneously charged:

1. Dr. subp. ticket is charged by the folio. The allowance for these tickets is twenty cents each, and this whether drafts or copies.

2. The indictment is charged by the folio. The rates of fees for a declaration in the supreme court should, I think, govern. This charge is $2.50 for the draft, and $1.25 for each copy. It is an inadequate compensation; but it seems to be a corresponding service in the supreme court, or so nearly such, that it must be held to apply, and it is the only one in any fee bill in that court which is analogous.

The practice in respect to the commitment of prisoners by the marshal to the custody of the jails of the states seems unsettled, and not uniform in the different states. The resolution of congress of September 23, 1789 (1 Stat. 96), recommended to the several states to pass laws making it the duty of the keepers of their jails "to receive and safe keep therein all prisoners committed under the authority of the United States, until they shall be discharged by due course of the laws thereof, under the like penalties as in case of prisoners committed under the authority of such states respectively." The state of New York passed a law in pursuance of this recommendation. Act Jan. 28, 1790; 2 Greenl. Comp. p. 292.[2]

The mittimus must, of course, be directed to the marshal, commanding him, in the name of the president of the United States, to convey

---

[2] [See note at end of case.]

and deliver the prisoner to the keeper of the jail, and it should, I think, also contain a command to the keeper to receive him. The original mittimus, or a copy of it duly certified by the marshal or his deputy, should be left with the keeper of the jail, as his authority for the detention. And, when it is necessary to bring the prisoner up for trial, or other cause, a writ of habeas corpus, directed to the marshal, and containing a clause directing the keeper to deliver him, would seem to be necessary, the marshal leaving, at the same time, a copy, certified by him, with the keeper, for his security. The writ in this form would afford a justification to both officers. This writ, or some equivalent authority, seems essential for the protection of the keeper in delivering the prisoner to the marshal, as he is responsible for him after the commitment, until discharged by due course of law; and the writ is also authority to the marshal to receive and bring up the prisoner. Whether some simpler mode might not be devised for bringing up the prisoner and committing him de die in diem, pending the trial, I cannot at present say. It is clear that the officers must be clothed with proper authority at all times to justify the custody of the prisoner, and to resist any attempt at escape or rescue.

The practice in the First circuit, as I am advised, is to commit by a regular mittimus, and to bring the prisoner up by a writ of habeas corpus, thereby furnishing the keeper of the jail and the marshal with the proper authority at all times to justify the execution of their duty.

NOTE. This act was as follows: "Be it enacted, etc., that it shall and is hereby declared to be the duty of the sheriffs of the several counties within this state, to receive him into the several gaols within their respective bailiwicks, and safely keep, all prisoners who shall be committed to the said gaols, by virtue of any process to be issued under the authority of the United States, until they shall be discharged by the due course of the laws thereof; the United States supporting such of the said prisoners as shall be committed for offences against the said United States. And in case any prisoner or prisoners shall escape out of the custody of any sheriff to whom he or they shall or may be committed as aforesaid, such sheriff shall be liable to the like actions and penalties as he would have been, had such prisoner or prisoners been committed or charged in custody, by virtue of any process issuing under the authority of this state; and such sheriff or sheriffs respectively, into whose custody any such prisoner or prisoners shall be as aforesaid committed, is hereby authorized to take and receive to his own use such sum or sums of money as shall be payable by the United States, for the use of the said gaols."

The following are the provisions of the Revised Statutes of New York upon the same subject:

"Section 1. It shall be the duty of the keepers of the respective county prisons, to receive into their prisons any person duly committed thereto for any offence against the United States, by any court or officer of the United States, and to confine such person in their prisons, until he shall be duly discharged; the United States supporting such person during his confinement.

"Sec. 2. It shall be the duty of the respective keepers of each of the county and state prisons, to receive into the said prisons and safely keep therein, subject to the discipline of such prison, any criminal convicted of any offence against the United States, sentenced to imprisonment therein, by any court of the United States, sitting within this state, until such sentence be executed, or until such convict shall be discharged by due course of law; the United States supporting such convict, and paying the expenses attendant upon the execution of such sentence.

"Sec. 3. In case any such prisoner shall escape, or attempt to escape out of the custody of any keeper to whom such prisoner may have been so committed, he shall be liable to the like punishment as if he had been committed by virtue of a commitment or conviction under the authority of this state.

"Sec. 4. The keeper of any prison to whom any such prisoner may have been committed, shall be liable to the like penalties and punishment, for any neglect or violation of duty in respect to the custody of such prisoner, as if such prisoner had been committed by virtue of a commitment or conviction under the authority of this state."

2 Rev. St. pp. 773, 774.